**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **BRIAN FARABEE,** | : |
| | : |
| **Petitioner,** | : |
| | : |
| **v.** | : |
| | : |
| | : |
| **HAROLD W. CLARKE, Director,** | : |
| **Virginia Department of Corrections,** | : |
| | : |
| **Respondent.** | : |
| | : |

**CIVIL ACTION NO. 2:15-cv-256**

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Brian Farabee's ("Petitioner") Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition originally named the Superintendent of Meherrin River Regional Jail ("Superintendent"), the Director of the Virginia Department of Corrections ("VDOC"), and the Commissioner of the Department of Behavioral Health and Developmental Services ("the Commissioner") as Respondents. *Id.* Respondents Superintendent and the Commissioner have since been dismissed from this action leaving Harold W. Clarke ("Respondent") as the sole Respondent. On October 18, 2017, Respondent filed a Second Motion to Dismiss the Petition. ECF No. 71. The Motion was referred for recommended disposition to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil

1

Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Second Motion to Dismiss, ECF No. 70, be **GRANTED** and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKROUND

Petitioner's relationship with the Virginia Department of Corrections ("VDOC") and the Commissioner of the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") is long-standing. By the undersigned's review, Petitioner has been moved between state psychiatric institutions and VDOC facilities for nearly twenty years. The saga tracks its origins to May 3, 1999. On that day, in the Circuit Court of the City of Williamsburg and James City County, Virginia ("W&JCC Circuit Court"), Petitioner was adjudicated Not Guilty by Reason of Insanity ("NGRI") of an arson charge, whereupon he was remanded to the custody of the Commissioner of the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") pursuant to Virginia Code § 19.2-182.3. *See Farabee v. Clarke, et al.*, Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 1.[1] The W&JCC Circuit Court's civil commitment order and Petitioner's need for inpatient hospitalization is frequently reviewed: Virginia Code § 19.2-182.5 requires that when a person is committed to an inpatient hospital after being found NGRI, "the committing court shall conduct a hearing twelve months after the date of commitment to assess the need for inpatient hospitalization . . . at yearly intervals for five years and at biennial intervals thereafter." Va. Code Ann. § 19.2-182.5(a). Previously, on November 8, 2013, the

---

[1] As detailed herein, Petitioner has filed multiple petitions for federal habeas relief in various cases, and the undersigned relies on the pertinent records from these other cases to develop the factual background underlying disposition of the Petition. *See Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that when considering a Motion to Dismiss, the Court "may properly take judicial notice of matters of public record . . .") (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Accordingly, the undersigned will take judicial notice of all filings in Petitioner's other federal habeas cases, including Case No. 2:16-cv-268 and Case No. 2:16-cv-661.

W&JCC Circuit Court entered an Order recommitting Petitioner to the custody of the Commissioner of VDBHDS for inpatient hospitalization after finding Petitioner to be mentally ill and in need of continued hospitalization, pending further Order of Court. *Farabee v. Clarke, et al.*, Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 2.

Since the 1999 adjudication, Petitioner has spent the majority of his confinement at Central State Hospital ("CSH"), with intermittent periods of incarceration in the custody of VDOC due to convictions he incurs, generally for assaulting nurses or staff, while at CSH. For instance, on November 8, 2000, Petitioner pleaded guilty to two counts of malicious wounding against CSH staff in the Circuit Court of Dinwiddie County, Virginia ("Dinwiddie Circuit Court"). Although the W&JCC Circuit Court previously adjudicated Petitioner as NGRI for his 1999 arson charges, and Petitioner was confined at a state mental health hospital (CSH) at the time he incurred the malicious wounding charges, the Dinwiddie Circuit Court found that Petitioner was competent to stand trial, accepted his plea of guilty, and on November 11, 2000, sentenced him to twenty (20) years of incarceration in VDOC, suspending all but three (3) years and four (4) months and placing him on supervised probation for an indefinite period of time. ECF No. 32 at 4. In 2004, Petitioner was again convicted of malicious wounding in the Circuit Court of Sussex County, for which he was sentenced to ten years of incarceration on or about March 17, 2004. ECF No. 71, attach. 7. Thus, when Petitioner is not confined in the VDOC serving an active criminal sentence, he is otherwise committed to the custody of the Commissioner of VDBHDS, based on the frequently reviewed 1999 civil commitment Order of the W&JCC Circuit Court.

In 2015, Petitioner was charged with assault and battery and destruction of property. On April 29, 2015, the Dinwiddie Circuit Court issued a show cause order to Petitioner alleging that

he violated the conditions of good behavior by assaulting CSH staff members in the spring of 2015, and to demonstrate why his probation should not be revoked. ECF No. 71, attach. 1. The order was served on Petitioner on May 12, 2015 while Petitioner was a patient at CSH. Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 1, 8. Approximately a week later, Petitioner filed his first state habeas petition with the Supreme Court of Virginia on May 20, 2015. Therein, Petitioner challenged his confinement pursuant to the Dinwiddie Circuit Court revocation proceedings. Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 1. The Supreme Court of Virginia would later dismiss this first state habeas petition on December 15, 2016. ECF No. 71, attach. 4.

On June 16, 2015 and July 19, 2015, the Dinwiddie Circuit Court ordered that a competency evaluation be performed on Petitioner, which was performed by Dr. Evan S. Nelson. Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 1. On August 12, 2015, the Dinwiddie Circuit Court found Petitioner to be competent to proceed with the revocation proceeding. Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 1. Pursuant to the August competency finding, on September 10, 2015, Petitioner was transported from CSH to Western State Hospital ("WSH"). Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 2. Upon the Dinwiddie Commonwealth's Attorney's discovery of Petitioner's 2004 malicious wounding conviction in Sussex County, the prosecution apparently filed a supplemental letter with the Dinwiddie Circuit Court advising of the same, and Petitioner was transferred from WSH to Meherrin River Regional Jail ("MRRJ") on or about October 14, 2015, and was ordered to remain there until his Dinwiddie Circuit Court revocation hearing on November 20, 2015. *See* ECF No. 71, attach. 10 (October 13, 2015 Second Addendum/Amendment/Supplement). *See also* Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 2.

At the November 20, 2015 revocation hearing, Petitioner was represented by appointed counsel, Ms. Linda H. Tomlin ("Revocation Counsel"). ECF No. 71, attach. 8 (November 20, 2015 Hearing Transcript). Ultimately, the Dinwiddie Circuit Court found that Petitioner had violated the terms of his previously suspended sentences by virtue of his March 2004 conviction for malicious wounding in Sussex County. ECF No. 71, attach. 8 at 28-29. *See also* Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 2. In the Dinwiddie Circuit Court's November 23, 2015 Revocation Order ("the Revocation Order"), the Court revoked Petitioner's previously suspended sentences, and re-suspended ten years on both sentences, ordering Petitioner to serve an active sentence of six (6) years and eight (8) months on each sentence, to be served concurrently. Case No. 2:16-cv-268, ECF No. 57, attach. 3 at 2. Petitioner appealed the Revocation Order to the Court of Appeals of Virginia, which was eventually denied on September 29, 2016, but Petitioner did not seek further review of the Revocation Order by appealing to the Supreme Court of Virginia.

Instead, Petitioner proceeded to file multiple petitions for a writ of habeas corpus in both state and federal courts. Because the procedural background of this case is integral to the Court's disposition thereof, the undersigned will now proceed with a chronology of Petitioner's various endeavors to obtain habeas relief:

A. Federal Habeas Petitions (Case Nos. 2:15-cv-256, 2:16-cv-268, and 2:16-cv-661)

On June 12, 2015, Farabee filed the instant Petition, essentially challenging the lawfulness of his revocation proceeding. ECF No. 1. The following is a summary of the claims upon which Petitioner seeks habeas relief pursuant to Section 2254 in the instant Petition:

1. Court orders to imprison Petitioner, removing him from the custody of the Commissioner of VDBHDS are void and unlawful because his order of commitment expressly states that he shall remain in inpatient hospitalization;

5

2. Incarceration by the Dinwiddie Circuit Court violates Petitioner's rights against double jeopardy and his Fifth Amendment due process rights;

3. The state cannot  simultaneously confine Petitioner  in the state mental health system under the Commissioner's custody while he is in jail under VDOC's custody;

4. Confining Petitioner in jail under the custody of the VDOC violates the Eighth Amendment's cruel and unusual punishment clause (and his Due Process rights) because the VDOC does not have the medical or mental health resources to care for Petitioner;

5. Petitioner's probation officer made inaccurate statements as a basis to revoke his 2000 suspended sentence in her April 29, 2015 violation report to the Dinwiddie Circuit Court;

6. Petitioner was denied the right to effective assistance of counsel throughout the 2015 revocation process because

   a. Petitioner's attorney did not move to dismiss the probation violation charge or move to exclude inadmissible evidence;

   b. The Dinwiddie Circuit Court erred in denying Petitioner's Motion for Appointment of Substitute Counsel;

   c. Petitioner's Revocation Hearing Counsel was ineffective for not bringing false statements contained in the Probation Violation Report to the Dinwiddie Circuit Court's attention;

7. Counsel appointed to represent Petitioner in the November 20, 2015 revocation hearing had a conflict of interest and abandoned Petitioner's case in violation of Petitioner's right to counsel and his right to due process;

8. Judge Robert O'Hara, the Dinwiddie Circuit Court judge assigned to preside over Petitioner's 2015 probation revocation hearing had a conflict of interest because he presided over one of Petitioner's revocation hearings in 2003, and Petitioner filed complaints to the Judicial Inquiry and Review Commission against Judge O'Hara;

9. The suspended sentence imposed on Petitioner in 2000 is unconstitutional because he is actually innocent of the charges due to his inability to knowingly and intelligently understand the proceedings against him;

10. Petitioner is actually innocent of the 2000 malicious wounding charges.

ECF No. 1.[2] The undersigned originally found that the Petition was a "mixed" petition because

Petitioner had failed to exhaust all of his claims in the state courts, and therefore recommended

---

[2] When Petitioner originally filed the Petition, three Respondents were named, including the Director of VDOC, the Commissioner of VDBHS, and the Superintendent of Meherrin River Regional Jail. ECF No. 1.  These original Respondents filed respective Motions to Dismiss (ECF Nos. 10, 14), and the matter was referred to the undersigned

dismissal with prejudice as to the Superintendent and the Commissioner and dismissal without prejudice as to the Director of VDOC to allow Petitioner to refile the Petition after exhausting his claims in state court.   ECF No. 36.   The District Court adopted the undersigned's recommendation, but dismissed the matter with prejudice as to all three Respondents and denied reconsideration of the same. ECF No. 42. Petitioner appealed to the Fourth Circuit, arguing that the District Court erroneously dismissed this first 2254 Petition with prejudice as to the Director of VDOC. ECF Nos. 46, 51. The Fourth Circuit agreed and vacated the District Court's Final Order dismissing the entire matter with prejudice and the Order denying reconsideration of the same, and remanded the matter back to the District Court for reconsideration. ECF Nos. 54-56.

Pursuant to the Fourth Circuit's remand instructions, on May 16, 2017, the District Court entered an Order adopting and approving the findings and recommendations "set forth in the Report and Recommendation of the Magistrate Judge filed June 24, 2016" and also ordered that

> the Petition, ECF No. 1, against the Superintendent and the Commissioner be DISMISSED WITH PREJUDICE; and that the Motion to Dismiss filed by the VDOC, ECF No. 10, be GRANTED and the Petition against the VDOC be DENIED and DISMISSED WITHOUT PREJUDICE, allowing Petitioner to refile a petition in this Court after exhausting his claims through the state court system.

ECF No. 57 at 5.   On June 15, 2017, Petitioner filed a Motion to Consolidate Cases (ECF No. 59) and another Motion for Reconsideration (ECF No. 60). That same day Petitioner also filed what appears to constitute a "conditional" Notice of Appeal because it included Petitioner's caveat that "Petitioner does express hereby his intent to withdraw this Notice of Appeal if the Court grants his accompanying Motion for Reconsideration." ECF No. 61.

---

for recommended dispositions.  In the first Report and Recommendation, filed June 26, 2016, the undersigned recommended dismissal of the Petition with prejudice as to the Superintendent of Meherrin River Regional Jail and the Commissioner of the VDHBS, and without prejudice as to the Director of VDOC. ECF No. 36.

On June 21, 2017, the Fourth Circuit advised that because Petitioner simultaneously filed a Motion for Reconsideration (ECF No. 60) and a Notice of Appeal (ECF No. 61), the Fourth Circuit would "treat the notice of appeal as filed as of the date the district court disposes of such motion [for reconsideration] and will docket the appeal following disposition of the motion," and requested that the Fourth Circuit be notified "upon entry of an order disposing of the motion." ECF No. 63 at 1.

On October 2, 2017, the District Court, finding that Petitioner had since exhausted all relevant habeas claims, entered an Order granting Petitioner's Motion for Reconsideration (ECF No. 60) regarding "the portion of the Court's May 16, 2017, Final Order that dismisses Petitioner's claims against the VDOC without prejudice" and directed Respondent to respond to the Petition. ECF No. 68 at 3.[3] Thus, every claim raised in the Petition against VDOC is still pending before this Court.

On October 18, 2017, and pursuant to the Court's October 2, 2017 Order (ECF No. 68), Respondent filed a Second Motion to Dismiss and Memorandum in Support, Rule 5 Answer, and *Roseboro* Notice. ECF Nos. 69-72. On November 6, 2017, Petitioner filed an Opposition to Respondent's Second Motion to Dismiss. ECF No. 75. Respondent did not file a Reply and the time for doing so has expired. Accordingly, the matter is fully briefed and ready for recommended disposition.

However, while the Fourth Circuit's consideration of the first Notice of Appeal was pending, Petitioner filed two additional federal petitions for habeas corpus relief, in Case No.

---

[3] On February 15, 2018, the Fourth Circuit notified Petitioner that it withheld docketing of his Notice of Appeal pending the District Court's ruling on his Motion for Reconsideration, and observed that on October 2, 2017, the District Court granted such Motion. ECF No. 82. Accordingly, the Fourth Circuit advised Petitioner that he could voluntarily dismiss the appeal in light of the October 2, 2017 Order. ECF No. 82. It appears that Petitioner made no effort to voluntarily dismiss the appeal, and on June 19, 2018, the Fourth Circuit dismissed the appeal "for failure to prosecute pursuant to Local Rule 45." ECF No. 85.

2:16-cv-268 and Case No. 2:16-cv-661. The former was a petition filed pursuant to Section 2241 on June 7, 2016 and purported to challenge the conditions of Petitioner's confinement as opposed to mounting a collateral attack on the underlying conviction and/or sentence.[4] The latter was another petition filed pursuant to Section 2254.

In the first petition, filed in Case No. 2:16-cv-268, Petitioner raised the following claims:

1. Petitioner is being held by VDOC in violation of the Due Process Clause;
2. Petitioner is being imprisoned in VDOC in violation of the Double Jeopardy Clause;
3. Petitioner has a Due Process right to be treated in a facility managed by VDBHDS;
4. Petitioner's placement with VDOC violates the Americans with Disabilities Act ("ADA");
5. the Dinwiddie Circuit Court exceeded its authority in violating the W&JCC Circuit Court Order requiring Petitioner to remain in inpatient hospitalization;
6. the Revocation Order of Dinwiddie Circuit Court violates Petitioner's right to be notified of the nature and cause of the offense against him and his Revocation Hearing Counsel never informed Petitioner of the nature and cause of the amended probation violation that resulted in Petitioner's suspended sentence being revoked[5];
7. Petitioner's sentence arose out of an invalid guilty plea for offenses of which he is actually innocent because it was Petitioner who was attacked and the alleged victim, a CHS employee, was "breaking up the [f]ray;"
8. Petitioner's confinement in VDOC violates the Eighth Amendment's ban on cruel and unusual punishment because Petitioner has a liberty interest in receiving treatment for his medical needs, and "[t]he treatment of specific modality clinically recommended for [P]etitioner is only available in a hospital of [VDBHDS] and is unavailable in [VDOC], which has been recommended to treat his serious mental illness and suicidality [sic];"
9. Petitioner's confinement in VDOC violates Petitioner's Due Process Rights because he is not receiving required treatment for his mental illness and is being subjected to "constant isolation, bodily restraint, and other deprivations [and] restrictions on freedoms of everyday life;"

---

[4] In Case No. 2:16-cv-268, Petitioner filed a total of sixteen grounds. The first four grounds were included in the June 7, 2016 Petition (ECF No. 1) and the remaining eleven grounds were included by virtue of an Amended/Supplemental Petition (ECF No. 12) dated October 17, 2016.

[5] Petitioner appears to refer to this offense as the 2004 malicious wounding charge in Sussex County. *See Farabee v. Clarke, et al.*, Case No. 2:16-cv-268, ECF No. 12 at 3 n.1.

10. the state of Virginia has no punitive interest in confining Petitioner in VDOC because he is insane and may not be incarcerated as a criminal;

11. Petitioner's sentence and commitment in VDOC violates his right to a Speedy Trial because the November 20, 2015 Dinwiddie Circuit Court Revocation Order revoked his revocation based on an offense (Sussex County malicious wounding) he was convicted of in 2004;

12. the Dinwiddie Count Circuit Court's Revocation Order contains patently false information rendering Petitioner's confinement in VDOC unconstitutional;

13. Petitioner's confinement in VDOC violates his due process rights because he is still under an active commitment Order from W&JCC Circuit Court;

14. Petitioner is actually innocent of the malicious wounding offense;

15. Petitioner's sentence in the Dinwiddie Circuit Court arose out of guilty pleas that are invalid and unlawfully obtained because Petitioner was on high doses of antipsychotic and other mind-altering drugs when he was being tried for and entered the guilty pleas in Dinwiddie Circuit Court; and

16. Petitioner was denied his right to effective assistance of counsel at the November 2015 Revocation Hearing because the attorney that was appointed to represent Petitioner had previously had a conflict of interest in representing Petitioner, Petitioner had previously filed complaints against the attorney with the Virginia State Bar, and the attorney did not confer with Petitioner and advise him of the charges against him prior to the Revocation Hearing.

Case No. 2:16-cv-268, ECF No. 12 at 1-16.[6]

After filing the Section 2241 Petition on June 7, 2016 in Case No. 2:16-cv-268, and ***prior***

to resolution of his first Section 2254 Petition in this case, Petitioner filed a second Section 2254

petition in this Court on November 17, 2016 in Case No. 2:16-cv-661. Therein, Petitioner raised

the following grounds for federal habeas relief:

1. The Dinwiddie Circuit Court was without jurisdiction to supersede the commitment order of W&JCC Circuit Court;

2. Petitioner's commitment to VDOC violated the Double Jeopardy Clause;

3. The criminal commitment order was ultra vires;

4. Petitioner's right to notice of the charge against was violated;

5. Petitioner has been falsely imprisoned;

---

[6] This Petition was disposed of via an Amended Report and Recommendation dated February 12, 2018, and adopted by the District Court in a Final Order dated May 15, 2018. *See* Case No. 2:16-cv-268, ECF Nos. 67 (Amended R&R), 84 (Final Order).

6. Petitioner's due process rights have been violated by his confinement in a penal institution; [7]
7. Petitioner has been subjected to cruel and unusual punishment;
8. Petitioner's due process rights have been violated by his confinement in a penal institution;
9. Petitioner's placement within VDOC violates the Americans with Disabilities Act;
10. Petitioner's placement with VDOC violates equal protection;
11. Petitioner is actually innocent;
12. Petitioner's 2000 guilty pleas were invalid and violated due process and his challenge is not procedurally barred because he is actual innocent of the charges;
13. Petitioner's due process rights have been violated by his confinement in a penal institution;
14. Petitioner's sentence and confinement violate his right to a speedy trial;
15. Petitioner's attorney at the probation revocation hearing was ineffective because: (a) She had a conflict of interest; (b) She did not prepare a defense; (c) She did not argue or present a case that Petitioner was incompetent; (d) She did properly present Petitioner's appeal;
16. The Dinwiddie Circuit Court violated Petitioner's due process rights by refusing to hear his *pro se* motions;
17. A decision favorable to the Petitioner would be good public policy.

*Farabee v. Clarke*, Case No. 2:16-cv-661, ECF No. 1. As Respondent notes in the Memorandum in Support of the Second Motion to Dismiss, the second Section 2254 petition in Case No. 2:16-cv-661 duplicates all of the claims asserted in the instant Section 2254 Petition (Case No. 2:15-cv-256), but the instant Petition raises additional claims (Claims 5, 6(c), and 8) that are not raised in Case No. 2:16-cv-661. *See* ECF No. 71 at 6. Therefore, the undersigned will consider the merits of all the claims in the instant Petition (Case No. 2:15-cv-256) and will recommend disposition of the second Section 2254 Petition in Case No. 2:16-cv-661 as a Second or Successive Petition by way of separate Report and Recommendation.

---

[7] Claims VI, VIII & XIII in the Petition filed in Case No. 2:16-cv-661 assert essentially the same argument.

B. <u>State Habeas Petitions</u>

Shortly after receiving the Dinwiddie Circuit Court's show cause order for revocation proceedings, Petitioner filed his first state habeas petition with the Supreme Court of Virginia on May 20, 2015. Therein, Petitioner challenged his confinement pursuant to the Dinwiddie Circuit Court revocation proceedings. Case No. 2:16-cv-268, ECF No. 57, attach. 4 at 1-2. The Supreme Court of Virginia would later dismiss this first state habeas petition on December 15, 2016. ECF No. 71, attach. 4.

On November 2, 2016, Petitioner filed a second state habeas petition with the Supreme Court of Virginia, challenging the legality of his confinement pursuant to the Revocation Order upon which the Supreme Court of Virginia determined to be seventeen (17) grounds including:

1. The court did not have power to sentence him to VDOC;
2. Petitioner's sentence to VDOC violates the Double Jeopardy Clause;
3. Petitioner's sentence is ultra vires;
4. The probation violation judgment violated the Petitioner's right to notice of the charge;
5. The show cause order was based on patently false information;
6. Petitioner's commitment to VDOC violated Due Process;
7. Petitioner's confinement and sentence constitute cruel and unusual punishment;
8. Petitioner's confinement and sentence violate due process;
9. Petitioner's confinement and sentence violate the Americans with Disabilities Act;
10. Petitioner's confinement and sentence violate equal protection;
11. Petitioner is actually innocent of the underlying charge of malicious wounding;
12. Petitioner's guilty pleas to the original charges violated due process;
13. Petitioner's confinement with DOC violates Due Process;
14. Petitioner's confinement and sentence violate the speedy trial statute;
15. Petitioner's counsel was ineffective at the November 20, 2015 revocation hearing;
16. Dinwiddie Circuit Court violated Due Process by not hearing Petitioner's *pro se* motions;
17. Petitioner's credit for time served was not properly calculated.

*See* ECF No. 71, attach. 5. On July 17, 2017, the Supreme Court of Virginia granted the

12

Department of Corrections' Motion to Dismiss, and ultimately dismissed Petitioner's second state habeas petition. ECF No. 71, attach. 6.

## II. DISCUSSION

A. Exhaustion

Before addressing the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted his claims. Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). Here, Respondent concedes that Petitioner has exhausted all of his claims. *See* ECF No. 71 at 6 ("[Petitioner] appears to have exhausted all his claims, having raised most of the other claims numerous times and again, most recently in this last state habeas corpus proceeding in the Virginia Supreme Court") (citing ECF No. 71, attach. 5 ("Respondent's Exhibit E")).

13

B. <u>Standards of Review</u>

    *1.  28 U.S.C. § 2254(d)*

       Habeas relief is warranted only if Petitioner can demonstrate that the adjudication of his claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, federal habeas relief is precluded, so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA[8], § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.") (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244)).  In other words, "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011).

       In *Williams v. Taylor*, the Supreme Court explained that the "exceptions" encapsulated by § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S. 362, 404-05 (2000).  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of

---

[8] Antiterrorism and Effective Death Penalty Act of 1996

materially indistinguishable facts. *Id.* at 405-06. This Court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). *See also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In making this determination under Section 2254(d)(1), the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."). Thus, it is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves."[9] *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). *See also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (explaining that the Court independently reviews whether that decision satisfies either standard).

---

[9] Pursuant to § 2254(d), the federal court must look to the state court decision that was "adjudicated on the merits in State court proceedings . . . resulting in a decision." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997). In this case, the qualifying state court decisions on the merits are the Supreme Court of Virginia's December 15, 2016 and July 17, 2017 decisions on Petitioner's state habeas petitions. *See* ECF No. 71, attach. 4 (December 15, 2016 Order); ECF No. 71, attach. 6 (July 17, 2017 Order).

Additionally, in undertaking such review, this Court is mindful that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. *Ineffective Assistance of Counsel*

Because there is no allegation that the state courts decided Petitioner's state habeas "differently than th[e U.S. Supreme] Court has on a set of materially indistinguishable facts," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), the relevant exception is "permitting relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law" and "[t]he applicable federal law consists of the rules for determining when a criminal defendant has received inadequate representation as defined in *Strickland*," *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d)(1)). *See also Strickland v. Washington*, 446 U.S. 668 (1984). Generally, to have been entitled to habeas relief in State court for ineffective assistance of counsel claims under the Sixth Amendment, Petitioner had to show both that his defense counsel provided deficient assistance, and that he was prejudiced as a result of counsel's deficiency. *Strickland v. Washington*, 446 U.S. 668, 700 (1984) (conceptualizing the inquiry as two required prongs: a deficiency prong and a prejudice prong). First, to establish deficient performance, Petitioner was required to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 688-89 (holding that there is a strong presumption that trial counsel provided reasonable professional assistance). Second, Petitioner was also required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

16

to undermine confidence in the outcome." *Id.* at 687, 693-94 (holding that counsel's errors must be "so serious as to deprive the defendant of a fair trial," and that a petitioner must "show that the errors had some conceivable effect on the outcome of the proceeding").

The United States Supreme Court summarized the high bar faced by petitioners in a federal habeas proceeding where a petitioner's Sixth Amendment ineffective assistance of counsel claims were previously rejected by the state court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009))) (internal citations omitted). *See also Knowles*, 556 U.S. at 123 ("Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard . . . Mirzayance's ineffective-assistance claim fails.") (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*)). To be sure, and particularly apropos to Petitioner's claim, the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

With these principles in mind, the undersigned now turns to the merits of the Petition.

C. The Petition (ECF No. 1)

    *1. Petitioner's civil commitment to the custody of VDBHS created a jurisdictional bar to the Dinwiddie Circuit Court Revocation Proceeding and Sentencing (Claim 1)*

    In Claim 1 of the Petition, Petitioner argues that his civil commitment to the custody of DHBHS creates a jurisdictional bar to the Dinwiddie Circuit Court considering his probation revocation proceeding. ECF No. 1 at 4. The Supreme Court of Virginia has previously rejected this claim, finding it barred under *Slayton v. Parrigan. See* ECF No. 71, attach. 6 at 2-3 ("The Court holds claim (I) is barred. That the revocation order may conflict, be inconsistent, or commit petitioner to different custodians than an order of a sister court does not render the revocation order void ab initio. Additionally, this issue was raised at trial and rejected on direct appeal to the Court of Appeals and could have been raised to this Court but was not. Thus, this non-jurisdictional issue is not cognizable in a petition for a writ of habeas corpus.") (citing *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975); *Brooks v. Peyton*, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969) (petition for a writ of habeas corpus may not be employed as a substitute for an appeal)). As clearly established by Fourth Circuit case law, "[i]n Virginia, the basic procedural bar rule is a simple one: no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not." *Pruett v. Thompson*, 771 F. Supp. 1428, 1437 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993) (citing *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975); Va. Code Ann. § 8.01-654(B)(2)).

    Notwithstanding this procedural bar to federal habeas review, the undersigned also **FINDS** that this claim is meritless. In ruling on a substantially similar argument in *Williams v. Commonwealth*, the Supreme Court of Virginia found that

        Regarding due process, it is undisputed that Williams sentencing for both the July Offense and the August Offenses satisfied due process in that he

18

had a hearing at which evidence was presented and he was provided a chance to be heard and to present documentary evidence as well as witnesses, and he had counsel throughout the proceedings. Indeed, Williams does not challenge the propriety of the sentence imposed for the July Offense or the involuntary civil commitment ordered with respect to the August Offenses; instead, his appeal focuses on the propriety of the sequencing of the imposition of the period of incarceration and the involuntary civil commitment.

Williams argues that the ends of justice exception should be applied here, because the circuit court "ignored the seriousness" of his mental illness and he is being punished "for having a mental illness." He asserts that the "process due to him was to commit him directly to inpatient hospitalization to receive treatment" as recommended by the doctors, and that punishing him by sending him to prison is a "manifest injustice." We disagree.

*Williams v. Commonwealth*, 294 Va. 25, 28 (2017) (citing *Hood v. Commonwealth*, 280 Va. 526, 536–37, 701 S.E.2d 421, 427 (2010)) (internal citation omitted). The same conclusion applies here. Accordingly, the undersigned **RECOMMENDS** that Petitioner's request for habeas relief on the grounds encapsulated by Claim 1 be **DENIED**.

### 2. Petitioner's incarceration in VDOC and civil commitment violates Double Jeopardy (Claim 2)

In Claim 2, Petitioner argues that because Petitioner has already been adjudged incompetent and is under an order of civil commitment based on that finding, the Dinwiddie Circuit Court improperly re-litigated the issue of Petitioner's sanity. ECF No. 1 at 4-5. The Supreme Court of Virginia already twice rejected this claim. In the first instance, the Supreme Court of Virginia found it was barred because "a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 71, attach. 4 at 3-4 (citing *Brooks v. Peyton*, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). The second time the Supreme Court of Virginia considered this claim, it found such claim to be successive, having been resolved against Petitioner in his first state habeas petition. *See* ECF No. 71, attach. 6 at 3-4.

Notwithstanding this procedural bar to federal review, this claim lacks merit. As the undersigned concluded in Case No. 2:16-cv-268, the W&JCC Circuit Court's determination of Petitioner's incompetency and adjudication as NGRI is not binding on a subsequent, opposite finding by the Dinwiddie County Circuit. The Supreme Court of Virginia's holding in *Williams v. Commonwealth* further supports this holding. Therein, Williams argued that his due process rights were violated by being made to serve a period of incarceration for offenses committed in July 2014, but subjected to a civil commitment for offenses he committed in August 2014. The Supreme Court of Virginia held that

> The five-year prison sentence Williams has been sentenced to serve is for a crime he committed and to which he pled guilty while he was sane and competent. It is not a manifest injustice that he be required to serve that sentence. In serving that five-year sentence, he is not being punished because he has a mental illness, but because of a crime he committed before his alleged temporary state of insanity and to which he pled guilty after he had recovered from his purported temporary state of insanity.
>
> There is no statutory direction concerning the proper sequence of the imposition of his incarceration for the criminal conviction in relation to his involuntary civil commitment for different crimes he committed during his subsequent period of temporary insanity. Williams' argument, in essence, is that imposing his incarceration before his involuntary civil commitment is manifestly unjust because it deprives him of mental health treatment that he needs. However, there is no manifest injustice in regard to the sequencing of his incarceration and involuntary civil commitment because his confinement for his involuntary civil commitment is suspended conditioned upon his incarceration, and the Department of Corrections (DOC) is required by statute to provide Williams all health treatment he needs during his period of incarceration.

*Williams v. Commonwealth*, 294 Va. 25, 28–29 (2017). Thus, the undersigned **FINDS** that Petitioner is not entitled to relief, and **RECOMMENDS** that Claim 2 be **DENIED**.

20

### 3. Petitioner's simultaneous confinement in VDOC and Civil Commitment violates Petitioner's Due Process rights (Claim 3)

In Claim 3, Petitioner argues that "the state cannot have it both ways, i.e., it cannot both simultaneously confine Petitioner in the state's mental health system and in the penal system (or jail) as such violates due process of law." ECF No. 1 at 5.   For the same reasons undergirding the undersigned's recommendation that Claim 2 be denied, the undersigned also **RECOMMENDS** that Claim 3 be **DENIED**.

### 4. Petitioner's placement in VDOC violates the Eighth Amendment and Petitioner's Due Process rights (Claim 4)

In Claim 4, Petitioner contends that his placement in VDOC violates the Eighth Amendment's prohibition on cruel and/or unusual punishment and violates his liberty interests because VDOC does not have the resources to care for Petitioner's mental health needs.   ECF No. 1 at 5-6.   The Supreme Court of Virginia has already considered and rejected this claim, finding that "the Court previously resolved these claims against [P]etitioner when it dismissed his first habeas petition, and no writ shall be granted on the basis of any allegation previously resolved against the [P]etitioner." ECF No. 71, attach. 6 at 4 (citing Va. Code Ann. § 8.01-663) ("Any such judgment entered of record shall be conclusive, unless the same be reversed, except that the petitioner shall not be precluded from bringing the same matter in question in an action for false imprisonment."). *See also Johnson v. Commonwealth*, 10 Va. Cir. 365 (1988) ("The Virginia Supreme Court has construed the 8.01-663 provision that habeas judgments are conclusive to mean that issues cannot be relitigated in subsequent habeas petitions absent a change in circumstances.") (citing *Hawks v. Cox*, 211 Va. 91 (1970)). The undersigned **FINDS** that this procedural default is an adequate and independent state law ground for refusing habeas

corpus relief.  *See Beaver v. Thompson*, 93 F.3d 1186, 1194 (4th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)).

Notwithstanding this procedural bar, the undersigned **FINDS** that this claim lacks merit. As noted in the undersigned's consideration of this claim in Case No. 2:16-cv-268, Petitioner does have the opportunity to receive proper mental health treatment while at VDOC facilities, and Petitioner simply refuses to accept such treatment.  *See* Case No. 2:16-cv-268, ECF No. 57, attach. 2 at 1-2, ¶ 5.  Moreover, the Supreme Court of Virginia's decision in *Williams* specifically approved of the provision and management of mental health treatment for a prisoner incarcerated in the VDOC notwithstanding a simultaneous civil commitment order.  *See Williams v. Commonwealth*, 294 Va. 25, 30 (2017) ("In addition, should the need arise, Williams can also be transferred to a facility outside of the DOC, including the facility where he would have served his involuntary civil commitment, if the DOC determines that it cannot provide the kind of care he requires during his period of incarceration. Code § 19.2–169.6 (providing a mechanism for involuntary civil commitment of inmates); *see also* Code § 53.1–40.2 (providing for the 'involuntary admission [to a hospital] of a prisoner who is sentenced and committed to the [DOC] and who is alleged or reliably reported to have a mental illness to a degree that warrants hospitalization') *and* Code § 53.1–40.9 (providing for an involuntary civil commitment proceeding for a 'prisoner whose release from the custody of the [DOC] is imminent and who may have a mental illness and be in need of hospitalization or treatment').  As a DOC inmate, Williams can be provided with mental health treatment options consistent with the recommendations of the psychologist and psychiatrist who examined him, or other assessments of his mental state and needs undertaken during his incarceration, if he continues to need such treatment. Therefore, the circuit court's order sending Williams to prison prior to his involuntary

civil commitment does not result in a grave injustice as regards his alleged deprivation of treatment."). The same conclusion applies here. Accordingly, the undersigned **RECOMMENDS** that Claim 4 should **DENIED**.

### 5. *Petitioner's Probation Officer made inaccurate statements (Claim 5)*

In Claim 5, Petitioner alleges that his Probation Officer, Judith Cummings ("Ms. Cummings") made inaccurate statements in a Major Violation Report ("the Report") filed April 23, 2015 and presented to the Dinwiddie Circuit Court. ECF No. 1 at 7. *See also* ECF No. 71, attach. 9 (Major Violation Report).[10] Specifically, Petitioner contends that the Report "incorrectly claimed [P]etitioner was diagnosed [with] Antisocial Personality disorder and had hung a phone up on her when she attempted to call him." ECF No. 1 at 7. Petitioner also takes issue with the fact that in the Report, "Ms. Cummings did not mention that the commonwealth attorney for Williamsburg Circuit Court is presenting seeking [P]etitioner's recontinued [sic] confinement in inpatient hospitalization on the basis Central State Hospital recommended such on the basis he is mentally ill . . ." ECF No. 1 at 7. The Supreme Court of Virginia found this claim was barred "because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 71, attach. 4 at 4 (citing *Brooks v. Peyton*, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). This Court may not review claims which have been procedurally defaulted in state court. *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)).

Notwithstanding the bar to the Court's review imposed by *Brooks*, the undersigned questions the relevance and accuracy of Petitioner's statements regarding Claim 5. The

---

[10] Petitioner lists the date of the Report as April 29, 2015, however, the face of the document reflects that the Report was filed on April 23, 2015 and signed by the Dinwiddie Circuit Court on April 28, 2015. *See* ECF No. 71, attach. 9. In the interest of clarity, the undersigned will consider April 23, 2015, the date on which the Report was filed when referring to such, although the date of the Report is not at issue in the Petition.

undersigned notes that in an August 31, 2015 Annual Not Guilty by Reason of Insanity Report completed by Petitioner's treating physicians at Central State Hospital prepared for the W&JCC Circuit Court, repeated references are made to Petitioner's primary diagnosis of Antisocial Personality Disorder with borderline traits." *See* Case No. 7:16-cv-326, ECF No. 44, attach. 2 at 23.[11]  As to the allegation that Ms. Cummings erroneously failed to include the fact that another jurisdiction had civilly committed Petitioner, this argument is perplexing.   Presumably, Petitioner's argument is that if the Dinwiddie Circuit Court was properly advised of Petitioner's continued civil commitment by the W&JCC Circuit Court, the Dinwiddie Circuit Court would not have revoked Petitioner's suspended sentence.  However, the Dinwiddie Circuit Court was well aware that Petitioner was under a Not Guilty By Reason of Insanity, as evidenced by Revocation Counsel's discussion of this fact during her allocution on Petitioner's behalf. *See* ECF No. 71, attach. 8 at 21("So he is still very much mentally impaired, Judge, and still functioning and he is under that not guilty by reason of insanity and is still under the commitment that he is not sane even though this Court this proceeding has found that he is competent and can go forward at this point.").   Indeed, the Dinwiddie Circuit Court expressly acknowledged this fact, first recounting that "the defendant back in 1999 in Williamsburg was found not guilty by reason of insanity," ECF No. 71, attach. 8 at 22, before ultimately revoking Petitioner's suspended sentence, finding that Petitioner's ability to eloquently, articulately, and reasonably communicate his desire to be removed from the VDOC system "undermines any notion that you are incompetent at this time to face the revocation hearing that you are before the

---

[11] Case No. 7:16-cv-326 is a Section 1983 prisoner civil rights case initiated by Petitioner in the United States District Court for the Western District of Virginia.  On January 12, 2018, Chief United States District Judge Michael F. Urbanski issued an Order granting the defendants' motion for summary judgment, and dismissing the case in its entirety.  Case No. 7:16-cv-326, ECF No. 53.

Court on," ECF No. 71, attach. 8 at 27-28. Accordingly, the undersigned **RECOMMENDS** that Claim 5 be **DENIED.**

### 6. *Revocation Counsel provided ineffective assistance (Claims 6(a)-(c))*

The Petition presents Claim 6 as "a denial of the right to effective assistance of counsel," containing three sub-claims: Claims 6(a), 6(b), and 6(c). ECF No. 1 at 8.

In Claim 6(a), Petitioner claims that Ms. Linda H. Tomlin ("Revocation Counsel"), who was appointed counsel for Petitioner during the Revocation Proceeding, was ineffective for failing to file a Motion to Dismiss the probation violation and/or assert the grounds encapsulated by Claims 1-5 during the Revocation Proceeding on November 20, 2015. ECF No. 1 at 8. As previously noted, the undersigned finds that the grounds asserted in Claims 1-5 are meritless. Therefore, the failure to raise any of them does not amount to ineffective assistance of counsel. To be sure, and particularly apropos to Petitioner's first five claims, the "[f]ailure to raise a meritless argument can *never* amount to ineffective assistance." *Juniper v. Zook*, 117 F. Supp. 3d 780, 791 (E.D. Va. 2015) (quoting *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996)) (emphasis added).

In Claim 6(b), Petitioner argues that the Dinwiddie Circuit Court erred by refusing to grant his Motions to Substitute Counsel because Petitioner made a requisite showing that Revocation Counsel provided constitutionally deficient representation. ECF No. 1 at 8.[12]

---

[12] The Petition's assertion of Claim 6(b) does not provide any further details regarding this claim or what his "requisite showing" entailed. *See* ECF No. 1 at 8 (baldly stating "[t]he Dinwiddie court abused its discretion by denying petitioners [sic] motions for substitute counsel; as he made a requisite showing in the motions for substitute counsel that was not refuted that his counsel was constitutionally ineffective & proceeded to try him anyway").

However, the Supreme Court of Virginia's previous discussion and rejection of this claim in a state habeas corpus action appears to provide the undersigned with the context and factual basis of Claim 6(b) that Petitioner neglected to provide, such that the undersigned could interpret the "requisite showing" to refer to Petitioner's complaints about the attorney-client relationship between Petitioner and Revocation Counsel resulting from Revocation Counsel's previous representation of Petitioner in other matters. *See* ECF No. 71, attach. 4 at 2. Revocation Counsel apparently represented Petitioner in a previous criminal matter in 2003, during which Petitioner filed two motions to relieve Revocation Counsel and a bar complaint against Revocation Counsel before Revocation

25

In Claim 6(c), Petitioner argues that Revocation Counsel was constitutionally deficient because she failed to bring to the Court's attention that Petitioner's probation officer made allegedly inaccurate statements and such statements were used as a basis for the Court to revoke Petitioner's previously suspended sentence. ECF No. 1 at 8. The undersigned notes that the Petition does not identify these allegedly inaccurate statements in any way, but assumes that Petitioner is referring to the allegedly inaccurate statements discussed in Claim 5. *See* ECF No. 1 at 8.

Claims 6(b) and (c) amount to bald assertions of error, and lack the factual support for the undersigned to consider the merits of the same, and are devoid of any allegation of how such alleged failures of Revocation Counsel prejudiced Petitioner. Such a bare, cursory recital of error does not satisfy either *Strickland* prong. *See Muhammad v. Warden of Sussex I State Prison*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) ("Petitioner does not articulate a factual basis to support this claim and does not identify with specificity any act or omission of counsel which was objectively unreasonable. Furthermore, petitioner does not attempt to demonstrate how these failures were prejudicial.").

Additionally, the Supreme Court of Virginia rejected Claim 6(b) in Petitioner's state habeas action, holding that such a claim was "barred because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 71, attach. 4 at 4 (citing *Brooks v. Peyton*, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). This Court may not review claims which have been procedurally defaulted in state court. *Ellis v. Johnson*, No. 2:09CV394,

---

Counsel ultimately withdrew from that representation. Petitioner appears to contend that because of the unpleasant history between Petitioner and Revocation Counsel, when appointed to represent Petitioner in the Revocation Proceeding, Revocation Counsel did not adequately consult with Petitioner and did not respond to communications from Petitioner and his family members. *See* ECF No. 71, attach. 4 at 2. This factual background appears to also serve as the factual basis for Claim 7, as discussed in Part II.C.7, *infra*. However, the undersigned need not make further efforts to divine the factual background of Claim 6(b) or to consider the merits of the same because Claim 6(b) was procedurally defaulted in state court, as discussed herein.

26

2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)).

Moreover, as the Supreme Court of Virginia concluded in denying Petitioner's ineffective assistance of Revocation Counsel claims (including Claim 6(c))[13] in Petitioner's first state habeas petition,

> The Court rejects these claims because there is no constitutional right to counsel or the concomitant right to the effective assistance of counsel at a probation revocation hearing where, as here, the record, including the transcript of the revocation proceeding, demonstrates that there is no question petitioner violated his probation by incurring a new conviction, and petitioner has not identified any mitigating circumstances or complex reasons why revocation was inappropriate.

ECF No. 71, attach. 4 at 3 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *Walker v. Forbes*, 790 S.E.2d 240, 243-45 (2016)). *See also* ECF No. 71, attach. 8 (November 20, 2015 Revocation Hearing Transcript). The Supreme Court of Virginia's reasoning was sound, and accurately reflected the law.  Based on these circumstances, the Supreme Court of Virginia's decision was not unreasonable, and for the aforementioned reasons, the undersigned **RECOMMENDS** that Claims 6(a)-(c) be **DENIED**.

### 7.   *Revocation Counsel labored under a conflict of interest (Claim 7)*

In Claim 7, Petitioner alleges that Revocation Counsel was appointed to represent Petitioner during the Revocation Proceeding, yet there was a conflict of interest that prevented Revocation Counsel from rendering effective assistance to Petitioner.  ECF No. 1 at 9-10. Specifically, Petitioner and his family members had previously attempted to have Revocation

---

[13] While not all of Petitioner's federal ineffective assistance of Revocation Counsel claims are the same claims (with the same numbering) as in the state habeas action, Claims 6(b) and 6(c) as stated and numbered in the Petition are the same claims with the same numbering as in the state habeas action. *Compare* ECF No. 1 at 8, *with* ECF No. 71, attach. 4 at 2-3 ("In claim 6(C) petitioner contends he was denied the effective assistance of counsel because counsel failed to challenge the accuracy of the probation officer's allegations that led to the revocation of petitioner's suspended sentences. . . . In claim (6)(B), petitioner contends the circuit court erred in denying petitioner's motion for substitute counsel.").

Counsel removed and replaced in an earlier proceeding.  Additionally, Petitioner contends that Revocation Counsel was unprepared on the date of the Revocation Hearing and did not confer with Petitioner in preparation for such Hearing, and did not seek a continuance such that she could better prepare.  ECF No. 1 at 9-10.  As discussed in the undersigned's consideration of Claims 6(a)-(c), when dismissing Petitioner's first state habeas petition by written Order dated December 15, 2016, the Supreme Court of Virginia previously rejected this claim, finding that

> there is no constitutional right to counsel or the concomitant right to the effective assistance of counsel at a probation revocation hearing where, as here, the record, including the transcript of the revocation proceeding, demonstrates that there is no question petitioner violated his probation by incurring a new conviction, and petitioner has not identified any mitigating circumstances or complex reasons why revocation was inappropriate.

ECF No. 71, attach. 4 at 3 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); *Walker v. Forbes*, 790 S.E.2d 240, 243-45 (2016).  *See also* ECF No. 71, attach. 8 (November 20, 2015 Revocation Hearing Transcript).

The undersigned **FINDS** that the Supreme Court of Virginia's reasoning was sound, and accurately reflected the law.  Based on these circumstances, the Supreme Court of Virginia's decision was not unreasonable, and for the aforementioned reasons, the undersigned **RECOMMENDS** that Claim 7 be **DENIED**.

### 8. *Dinwiddie Circuit Court Judge The Honorable Robert O'Hara should have recused himself from the Revocation Proceeding (Claim 8)*

Petitioner argues that The Honorable Robert O'Hara should have recused himself from presiding over Petitioner's Revocation Proceeding because Petitioner and his Legally Authorized Representatives had previously filed judicial complaints (and a lawsuit) against Judge O'Hara.  ECF No. 1 at 11.  In light of this alleged conflict of interest, Petitioner contends that Judge O'Hara's revocation and sentencing of Petitioner amounted to a miscarriage of justice and a

28

judgment of conviction that is void. ECF No. 1 at 11. By written Order dated December 15, 2016, the Supreme Court of Virginia rejected this claim, finding that Claim 8 was barred "because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal." ECF No. 71, attach. 4 at 3-4 (citing *Brooks v. Peyton*, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). This Court may not review claims which have been procedurally defaulted in state court. *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)). Claim 8 was "procedurally defaulted in the Supreme Court of Virginia because [it was] raised and rejected on procedural grounds at trial and on direct appeal. . . . Thus, since Petitioner's claims were procedurally defaulted in state court, they are likewise defaulted for the purposes of federal habeas review." *Ellis v. Johnson*, No. 2:09CV394, 2010 WL 1286040, at *1 (E.D. Va. Mar. 30, 2010) (citing *Henry v. Warden*, 265 Va. 246, 576 S.E.2d 495, 496 (Va. 2003); *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108 (1975); *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)) (internal citations omitted). The undersigned **FINDS** that this procedural default is an adequate and independent state law ground for refusing habeas corpus relief. *See Beaver v. Thompson*, 93 F.3d 1186, 1194 (4th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)).

Additionally, and pursuant to Virginia Code Section 19.2-306(A), the Dinwiddie Circuit Court "undoubtedly has the power to revoke [the suspension of a sentence] when the defendant has failed to comply with the conditions of the suspension." *Russnak v. Commonwealth*, 10 Va. App. 317, 321, 392 S.E.2d 491, 493 (1990) (quoting *Griffin v. Cunningham*, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964)) (alteration in original). A sentencing court's revocation of a suspended sentence "will not be reversed unless there is a clear showing of abuse of discretion." *Keselica v. Commonwealth*, 34 Va. App. 31, 35, 537 S.E.2d 611, 613 (2000) (quoting *Davis v.*

29

*Commonwealth*, 12 Va. App. 81, 86, 402 S.E.2d 684, 687 (1991))).  Petitioner does not identify how or why Judge O'Hara's decision to revoke Petitioner's previously suspended sentence in November 2015 was an abuse of discretion.  Accordingly, the undersigned **RECOMMENDS** that Claim 8 be **DENIED**.

> 9.  *Petitioner is actually innocent of the malicious wounding conviction because he was forcibly medicated at the time he entered the plea (Claim 9)*

In Claim 9, Petitioner argues that he is actually innocent of his 2000 malicious wounding conviction because the Court unlawfully accepted his guilty plea when he was forcibly medicated with high doses of antipsychotic and sedative drugs.  Such forced medication rendered Petitioner unable to "aid in his defense or understanding the proceedings against him or make an intelligent [and knowing] plea."  ECF No. 1 at 12.  As Respondent notes, on December 15, 2016, the Supreme Court of Virginia previously rejected this claim when denying Petitioner's first state habeas petition "because assertions of actual innocence are governed by Code §§ 19.2-327.1 through -327.6 and Code §§ 19.2-327.10 through -327.14, and are outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention."  ECF No. 71, attach. 4 at 4 (citing *Lovitt v. Warden*, 266 Va. 216, 259, 585 S.E.2d 801, 826-27 (2003)).  Petitioner never raised this claim of actual innocence before 2015, and as Respondent notes, "[t]he Supreme Court has never authorized the federal courts to grant relief upon a 'freestanding' claim of actual innocence."  ECF No. 71 at 8 (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993); *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1932 (2013)).  Additionally, because more than ten years have passed since Petitioner entered his guilty plea in 2000 and the statute of limitations for asserting this claim expired, the Court would be required to deny and dismiss this claim as untimely.  *See Gilmore v. Ballard*, No. 2:09-CV-00041, 2009 WL 6319261, at *1 (S.D.W. Va. Oct. 22, 2009), *report and recommendation adopted in part*, No. CIV.A. 2:09-

00041, 2010 WL 1286891 (S.D.W. Va. Mar. 26, 2010).   ("On April 24, 1996, a one-year limitation for filing of federal habeas corpus petitions was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ('the AEDPA').").   Section 2244(d)(2) of the AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2). Therefore, Section 2254 petitions such as the instant Petition are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the expiration of the time to seek direct review of the highest state court's decision by the Supreme Court of the United States.  *See* 28 U.S.C. § 2244(d)(1)(A).   Accordingly, and in light of the state procedural bar to the Court's consideration of this claim, the undersigned **RECOMMENDS** that Claim 9 be **DENIED**.

> *10. Petitioner is actually innocent of the malicious wounding conviction because the victim was injured while attempting to separate Petitioner from another inmate who was attacking Petitioner (Claim 10)*

In a variation of Claim 9, Petitioner argues in Claim 10 that he is actually innocent of the charge of malicious wounding of Craig Taylor, a nurse at Central State Hospital in 2000, for which he entered a guilty plea that was unknowing and unintelligent.   ECF No. 1 at 13. According to Petitioner, he did not maliciously wound Nurse Taylor; instead, Nurse Taylor was injured when he tried to separate Petitioner from another inmate who was attacking Petitioner. ECF No. 1 at 13.   For the same reasons undergirding the undersigned's rejection of Claim 9, the undersigned **RECOMMENDS** that Claim 10 be **DENIED**.

31

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Respondent's Second Motion to Dismiss, ECF No. 70, be **GRANTED** and the Petition, ECF No. 1, be **DENIED AND DISMISSED WITH PREJUDICE**.

### IV. OUTSTANDING MOTIONS

There are also several outstanding Motions filed by Petitioner that remain unresolved. These Motions include the following:

*1. Motion to Stay the Proceedings (ECF No. 66)*

On September 20, 2017, Petitioner filed a Motion to Stay the Proceedings in this matter and in a related habeas matter, Case No. 2:16-cv-661 so that Petitioner could obtain counsel. ECF No. 66. In the District Court's October 2, 2017 Order granting Petitioner's Motion for Reconsideration, the District Court delegated responsibility for disposing of the Motion to Stay to the undersigned. *See* ECF No. 68 at 5 ("After receiving Respondent's answer, the Magistrate Judge shall determine, in the first instance, whether to grant or deny Petitioner's motion requesting a stay of further proceedings in this case and in 2:16cv661. Unless and until a stay is granted, Petitioner is personally responsible for submitting any reply brief he wishes to file in this case."). Upon consideration of Petitioner's Motion to Stay, the record of this case, and the fact that over nine months has elapsed since Petitioner filed the Motion to Stay and Petitioner has not retained an attorney, and filed a *pro se* reply brief to Respondent's Second Motion to Dismiss (ECF No. 75), Petitioner's Motion to Stay the Proceedings (ECF No. 66) is **DENIED**.

*2. Motion for Extension of Time to File Response/Reply to Second Motion to Dismiss (ECF No. 73)*

On November 6, 2017, Petitioner filed a Motion for Extension of Time to File a Response/Reply to the Second Motion to Dismiss filed by Respondent. ECF No. 73. Therein,

Petitioner seeks additional time to respond to Respondent's Second Motion to Dismiss. The deadline for Petitioner's response to the Second Motion to Dismiss was November 20, 2017. On the same day as he filed his Motion for Extension (ECF No. 73), Petitioner filed a Response in Opposition to the Second Motion to Dismiss on November 6, 2017. ECF No. 75. In light of the fact that Petitioner's Motion was filed within the deadline, rendering Petitioner's request for an extension unnecessary, Petitioner's Motion for Extension (ECF No. 73) is **DENIED AS MOOT**.

    *3. Motion for Docket Sheet (ECF No. 83)*

On March 1, 2018, Petitioner filed a Motion requesting that he be provided with a copy of the docket sheet. Petitioner's Motion (ECF No. 83) is **GRANTED**, and the Clerk's Office is directed to provide Petitioner a copy of the docket sheet when a copy of this Report and Recommendation is mailed to him.

<h2 style="text-align:center">V. REVIEW PROCEDURE</h2>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.

140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 3, 2018